1  **GUTRIDE SAFIER LLP**
   SETH A. SAFIER (State Bar No. 197427)
2  MARIE A. MCCRARY (State Bar No. 262670)
   HAYLEY REYNOLDS (State Bar No. 306427)
3  100 Pine Street, Suite 1250
   San Francisco, CA 94111
4  Telephone: (415) 336-6545
   Facsimile:  (415) 449-6469
5
6  Attorneys for Plaintiffs

7

8              UNITED STATES DISTRICT COURT FOR THE

9              NORTHERN DISTRICT OF CALIFORNIA

10

11 | MEHVA ROFFMAN and LISA CHONG, as | CASE NO.
   | individuals, on behalf of themselves, the |
12 | general public, and those similarly situated, | CLASS ACTION COMPLAINT FOR
   | | VIOLATION OF THE CALIFORNIA
13 | | CONSUMERS LEGAL REMEDIES ACT;
   |                                Plaintiffs, | FALSE ADVERTISING; FRAUD, DECEIT,
14 | | AND/OR MISREPRESENTATION; UNFAIR
   | | BUSINESS PRACTICES; AND UNJUST EN-
15 |        v. | RICHMENT
16 | PERFECT BAR, LLC, | JURY TRIAL DEMANDED
17 |                                Defendant. |

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

1.      Plaintiff Mehva Roffman and Lisa Chong, by and through their counsel, bring this class action against Defendant Perfect Bar, LLC ("Defendant") to seek redress for its unlawful and deceptive practices in labeling and marketing its consumer food products.

2.      Consumers are increasingly health conscious and, as a result, many consumers seek foods high in protein. To capitalize on this trend, Defendant prominently labels its consumer food products as providing specific amounts of protein per serving depending on the product, such as "15G PROTEIN" on the front of the Perfect Bar in Dark Chocolate Chip Peanut Butter flavor and "7G PROTEIN" on the front of the Perfect Peanut Butter Cups Dark Chocolate flavor. Consumers, in turn, reasonably expect that each product will actually provide the amount of protein per serving claimed on the front of the product package in a form that can be used by the body as protein.

3.      The Food and Drug Administration ("FDA") recognizes that (1) when manufacturers tout an amount of protein on the front label that amount is likely to be material to purchasing decisions, even though reasonable consumers may not know the total amount of protein they need to ingest on a daily basis, and (2) not all proteins are the same in their ability to meet human nutritional requirements, so a simple statement about the number of grams does not actually inform consumers about how much usable protein they are receiving. Some proteins are deficient in one or more of the nine amino acids essential to human protein synthesis and/or are not fully digestible within the human gut. When a human body uses up the least prevalent essential amino acid from a food product, protein synthesis shuts down and all of the remaining amino acids from that protein source degrade mostly into waste. Likewise, whatever portion of a protein source is not digestible is similarly unavailable for protein synthesis. A protein's ability to support human nutritional requirements is known as its "quality."

4.      The FDA required method for measuring protein quality is called the "Protein Digestibility Corrected Amino Acid Score"—known by its acronym PDCAAS (pronounced Pee-Dee-Kass). It combines a protein source's amino acid profile and its percent digestibility into a discount factor ranging from 0.0 to 1.0 that, when multiplied by the total protein quantity, shows how much protein in a product is actually available to support human nutritional requirements.

Class Action Complaint

The regulations term this the "corrected amount of protein per serving." 21 C.F.R. § 101.9(c)(7)(ii). The FDA prohibits front label claims about the amount of protein, unless manufactures also provide information about the protein quality in the nutrition fact panel ("NFP") "expressed as" a percent daily value ("%DV") and placed immediately adjacent to the statement of protein quantity. 21 C.F.R. § 101.9(c)(7)(i)-(iii). The %DV is the corrected amount of protein per serving divided by the daily reference value for protein of 50 grams. *Id.* Using the same example of a product containing 10 grams total protein per serving with a PDCAAS of .5, the %DV is 10% (5g/50g). Had all of the protein in the product been useful in human nutrition, the %DV would be 20% (10g/50g).

5.     The protein claims on the front of all of Defendant's products – such as "15G PROTEIN" – are misleading because they are stated in the form of a quantitative amount appearing alone, without any information about protein quality. FDA regulations prohibit a manufacturer from stating "the amount or percentage of a nutrient" on the front label if it is "false or misleading in any respect." 21 C.F.R. § 101.13(i)(3). The primary protein source in Defendant's products is nut protein (including peanuts, cashews, and almonds). Nuts are low quality protein with a PDCAAS score of between 0.4 and 0.5, which means that only 40-50% of the protein in Defendant's products is actually available to support human protein needs. Accordingly, although Defendant advertises its Perfect Bar in Dark Chocolate Chip Peanut Butter flavor, for example, with a "15g PROTEIN" claim, it actually provides, in a form that humans can use, as little as 7.5 grams of protein, i.e., less than half the protein consumers reasonably expect to receive based on the label. This is misleading.

6.     Additionally, Defendant failed to provide in the NFP a statement of the corrected amount of protein per serving calculated according to the PDCAAS methodology and expressed as a %DV for some of its products, including the Perfect Peanut Cups, Perfect Bites, and Perfect Kids Bars. The protein claims on the front of those packages, such as "7g PROTEIN" made on the Perfect Peanut Butter Cup Dark Chocolate flavor, are unlawful in violation of parallel state and federal laws because Defendant did not comply with the regulatory requirements for making a protein claim.

7.      Defendant's unlawful and misleading protein claims caused Plaintiffs and members of the Class to pay a price premium for the products.

**PARTIES**

8.      Mehva Roffman ("Roffman") is an individual and a resident of San Francisco, California.

9.      Lisa Chong ("Chong") is an individual and a resident of San Francisco, California.

10.      Roffman and Chong are collectively referred to hereafter as "Plaintiffs."

11.      Defendant Perfect Bar, LLC. ("Defendant") is a corporation existing under the laws of Delaware with its principal place of business in San Diego, California.

**JURISDICTION AND VENUE**

12.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiffs and Defendant are citizens of different states.

13.      The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

14.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

15.      In accordance with California Civil Code Section 1780(d), Plaintiff Chong con-currently files herewith a declaration establishing that, at various times throughout the class pe-riod, she purchased Perfect Bar protein bars in the Dark Chocolate Chip Peanut Butter flavor at stores in the Bay Area, including a Safeway retail store in Daly City, California and a Target retail store in Colma, California, from approximately January 2018 to approximately January 2022. (Plaintiff Chong's declaration is attached hereto as Exhibit A.)

16.     Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## **SUBSTANTIVE ALLEGATIONS**

17.     Defendant manufactures, distributes, markets, advertises, and sells a variety of protein products in the United States under the brand name "Perfect Bar." These products, including protein bars and peanut butter cups, have packaging that predominately, uniformly, and consistently states on the principal display panel of the product labels that they contain and provide a certain amount of protein per serving. Plaintiff has attached as Exhibit B a non-exhaustive list of the products that make protein claims on the front of the product packages. The products listed in Exhibit B, and any other Perfect Bar brand products (including any discontinued flavors sold during the Class Period) that claim a specific amount of protein on the front of its label, will hereinafter be referred to as the "Products."

18.     The representation that the Products contain and provide a specific amount of protein per serving was uniformly communicated to Plaintiffs and every other person who purchased any of the Products. The same or substantially similar product label has appeared on each Product during the entirety of the Class Period in the general form of the following example:



19.    The nutrition facts panel on the back of some of Products, including the Perfect Peanut Butter Cups, Perfect Bites, and the Perfect Kids Bars, uniformly and consistently failed to provide any statement of the corrected amount of protein per serving, expressed as a %DV, throughout the Class Period. The nutrition facts panel of the Products has appeared consistently throughout the Class Period in the general form of the following example (from the Perfect Peanut Butter Cup Dark Chocolate flavor):



20.     As described in detail below, Defendant's advertising and labeling of the Products as containing and providing specific amounts of protein per serving is unlawful, misleading, and intended to induce consumers to purchase the Products at a premium price, while ultimately failing to meet consumer expectations. The Products' front label protein claims are misleading because they deceive reasonable consumers into believing that a serving of the Products will provide the grams of protein as represented on the label, when in fact, correcting for the Products' poor protein quality through PDCAAS, the amount provided will be approximately half or less because Defendant uses nut proteins, which are of low biological value to humans, in the Products.

21.     Additionally, for some of the Products, Defendant's failure to provide the required statement of the corrected amount of protein per serving also deceived and misled reasonable consumers into believing that a serving of the Products will provide the grams of protein represented on the label, when that is not true. The Products' front label protein claims on these Products are unlawful because Defendant did not: (1) calculate the "corrected amount of protein per serving" based on the quality of the product's protein using the PDCAAS method; and (2) provide a statement of that corrected amount of protein per serving in the NFP, expressed as %DV. 21 C.F.R. § 101.9(c)(7)(i) & (iii). The false, misleading, and unlawful front label protein claims induced consumers to purchase the Products at a premium price.

**Consumer Demand for Protein**

22.     Many American consumers are health conscious and seek wholesome, natural foods to keep a healthy diet, so they routinely rely upon nutrition information when selecting and purchasing food items.

23.     Protein is found throughout the body—in muscle, bone, skin, hair, and virtually every other body part or tissue. The health benefits of protein are well studied and wide ranging. Scientific studies have confirmed that protein can assist in weight loss, reduce blood pressure,

reduce cholesterol, and control for risk factors for cardiovascular diseases. The National Academy of Medicine recommends that adults get a minimum of .8 grams of protein for every kilogram of body weight per day, or just over 7 grams for every 20 pounds of body weight.[1] For a 140-pound person, that means about 50 grams of protein each day. For a 200-pound person, that means about 70 grams of protein each day.

24.     The health benefits of protein are just as important, if not more important, for children. Children are in a relative state of constant growth and rely on protein as the building block of muscle, bone, skin, hair, and virtually every other body part or tissue. The National Academies of Science recommends the following amounts of daily intake of protein based on age group: 1-3 years old: 13 g of protein per day; 4-8 years old: 19 g of protein per day; 9-13 years old: 34 g of protein per day.[2]

25.     Protein *quantity* by itself does not tell the full story of protein from a human nutritional standpoint. A protein's *quality* is also critical because humans cannot fully digest or utilize some proteins. Proteins are not monolithic. They are simply chains of amino acids, and different types of amino acids chained together in different ways will make different types of proteins. Further, the makeup of the protein changes the function of that protein in the body, and certain types of proteins are more easily digested and used by humans than others.

26.     All of a human's proteins are formed through the process of protein synthesis within their own bodies. That is, although humans consume dietary proteins, they digest those proteins, break them down into their constituent amino acids, and then use those amino acids as building blocks to synthesize the human proteins necessary for life, tissue repair, and other functions. Of the twenty total amino acids, humans can produce only eleven of them on their own. Humans cannot produce, under any circumstances, nine of the amino acids required for protein

---

[1] National Academies of Medicine. *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (Macronutrients).*
[2] *Id.*

synthesis. These nine amino acids are called the "essential amino acids" and they must be supplied through the diet.

27.     All nine essential amino acids are necessary for protein synthesis to take place. Lacking even one essential amino acid will prevent protein synthesis from occurring, and the rest of the proteins will degrade into waste. Accordingly, once the body uses up the limiting essential amino acid from a protein source, the remainder of that protein becomes useless to human protein synthesis and has little nutritional value. As the FDA has explicitly recognized, "[b]ecause excess amino acids are not stored in the body, humans need a constant supply of good quality dietary proteins to support growth and development." 58 Fed. Reg. 2079 at 2101. High-quality proteins, therefore, are those that contain all nine essential amino acids because they have a greater effect on protein synthesis and are fully digestible. A dietary protein containing all of the essential amino acids in the correct proportions is typically called a "complete protein."

28.     A protein source's digestibility also affects the amount of useable protein a person receives from consuming it. Many plant-based proteins are only 85% digestible, meaning 15% of the protein from that source will simply pass through the body without ever being absorbed at all.

29.     As the FDA has stated in official guidance, "Accurate methods for determining protein quality are necessary because different food protein sources are not equivalent in their ability to support growth and body protein maintenance." 56 Fed. Reg. 60366, § B. The Protein Digestibility Corrected Amino Acid Score ("PDCAAS"), is the FDA mandated measure of protein quality, and it accounts for both the amino acid profile and the digestibility of the protein. 21 C.F.R. § 101.9(c)(7)(ii).

30.     The PDCAAS method requires the manufacturer to determine the amount of essential amino acids that the food contains and then combine that with the proteins' digestibility into an overall discount factor (i.e., a "score" from 0.0-1.0) that represents the actual amount of protein the food provides nutritionally when multiplied by raw protein quantity. The regulations term this the "corrected amount of protein per serving." 21 C.F.R. § 101.9(c)(7)(i).

31.     Defendant uses plant-based nut proteins in its products. Because of the differences in benefits depending on the amino acid composition of a protein, the source of protein is impor-

tant. Whey protein is animal-based and contains all nine essential amino acids. It has a high bio-logical value and is fully digestible by humans. Thus, whey protein has a PDCAAS of 1.0. Plant proteins rarely contain all nine essential amino acids.  Further, plant proteins such as nut proteins (including peanuts and almonds), which Defendant uses in the Products according to the ingredient lists, are of low quality to humans. These types of proteins typically have a PDCAAS of between .4 and .5, meaning only 40-50% of the protein from those sources will be useable by humans as protein. Accordingly, Defendant's use of low quality proteins means that they actually provide far less protein to humans than the Product labels claim.

**Federal and State Regulations Governing Food Labeling**

32.     Identical federal and California laws regulate the content of labels on packaged food. The requirements of the federal Food, Drug & Cosmetic Act ("FDCA"), and its labeling regulations, including those set forth in 21 C.F.R. §§ 101, 102, were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). The federal laws and regulations discussed below are applicable nationwide to all sales of packaged food products. Additionally, none of the California laws sought to be enforced here imposes different requirements on the labeling of packaged food for sale in the United States.

33.     According to FDA regulations, "[a] statement of the corrected amount of protein per serving, as determined in paragraph (c)(7)(ii) of this section, calculated as a percentage of the RDI or DRV for protein, as appropriate, and expressed as a Percent of Daily Value . . . ***shall*** be given if a protein claim is made for the product . . ." 21 C.F.R. 101.9(c)(7)(i) (emphasis added). Further, FDA regulations require the %DV to be calculated using PDCAAS, a method that ac-counts for both protein quantity and protein quality. 21 C.F.R. § 101.9(c)(7)(i)-(iii); FDA Food

Labeling Guide, p. 29, Question N.22.[3] The first step is to calculate the "corrected amount of protein per serving" by multiplying protein quantity by the PDCAAS quality value, and then dividing that "corrected amount" by 50 grams (the "recommended daily value" for protein) to come up with the %DV. *Id.*

34.     The Products all make protein claims on the front label, but some fail to provide a statement of the corrected amount of protein per serving in the NFP calculated according to the PDCAAS method. The protein claims on the front of these Products are, therefore, unlawful, and were never permitted to be on the labels in the first instance.

35.     Defendant's use of a front-label protein claim, while failing to include the required statement of the corrected amount of protein per serving in the NFP calculated using the PDCAAS method and expressed as a %DV, is also misleading. By failing to provide it, Defendant misled consumers into believing that the Products provide a higher amount of protein than they really do. It also enabled Defendant to conceal the fact that its Products consist of low quality proteins that simply do not provide all of the protein that quantity alone represents. Indeed, when promulgating 21 C.F.R. § 101.9(c)(7), the FDA explained in published guidance that "Information on protein quantity alone can be misleading on foods that are of low protein quality." It also explained that it was prohibiting manufacturers from making any protein claims at all *unless* the manufacturer provides a statement of the corrected amount of protein per serving in the NFP based on PDCAAS. 58 Fed. Reg. 2079 at 2101-2.

36.     Similarly, 21 C.F.R. § 101.13(i)(3) prohibits manufacturers from making a claim on the front of a product's package about the "amount or percentage of a nutrient," such as protein, if the statement is "false or misleading in any respect." If it is, then "it may not be made on the label." 21 C.F.R. § 101.13(b). This is true even if the same amount appears in the nutrition facts panel. 21 C.F.R. § 101.13(c). The FDA explained in promulgating section 101.13(i) that the

---

[3] Guidance for Industry: A Food Labeling Guide ("FDA Food Labeling Guide") p. 29, Question N22, U.S. Food & Drug Administration, https://www.fda.gov/media/81606/download (last accessed February 18, 2020).

regulation was necessary "since many consumers have a limited knowledge and understanding of the amounts of nutrients that are recommended for daily consumption," which means that "a statement declaring that the product contained a specified amount of a nutrient could be misleading. By its very presence, such a statement could give consumers who were unfamiliar with the dietary recommendations the false impression that the product would assist them in maintaining healthy dietary practices relative to the amount of the nutrient consumed when it, in fact, would not." 56 Fed. Reg. 60421. The rules are different for amounts in the NFP and nutrient content claims because a voluntary nutrient declaration on the front panel "is viewed by the agency as an effort to market the food as a significant source of nutrients." 56 Fed. Reg. 60366.

37.     The protein claims on the front of all the Products are therefore misleading because the Products all use poor quality nut proteins. The FDA has promulgated a separate set of regulations that govern nutrient content claims on the front of a package. 21 C.F.R. § 101.13. A nutrient content claim is a claim that "expressly or implicitly characterizes the level of a nutrient." 21 C.F.R. § 101.13(b). "Express" nutrient content claims include any statement outside the Nutrition Facts Panel, about the level of a nutrient. 21 C.F.R. 101.13(b)(1); 21 C.F.R. § 101.13(c). Stating information from the nutrition facts panel (such as grams protein per serving) elsewhere on the package necessarily constitutes a nutrient content claim. 21 C.F.R. § 101.13(c).

> A manufacturer cannot make a nutrient content claim in the form of a "statement about the amount or percentage of a nutrient" if the statement is "false or misleading in any respect." 21 C.F.R. 101.13(i)(3).

38.     Under the FDCA, the term false has its usual meaning of "untruthful," while the term misleading is a term of art that covers labels that are technically true, but are likely to deceive consumers.

39.     While a required statement *inside* of the NFP escapes regulations reserved for nutrient content claims (21 C.F.R. § 101.13(c)), the identical statement *outside* of the NFP is still considered a nutrient content claim and is therefore subject to 21 C.F.R. § 101.13(i)(3). 21 C.F.R. § 101.13(c). Indeed, the Ninth Circuit has specifically held that "a requirement to state certain facts in the nutrition label is not a license to make that statement elsewhere on the product." *Reid v. Johnson & Johnson*, 780 F.3d 952, 960 (9th Cir. 2015). Thus, Defendant's quantita-

tive protein claims on the front label are subject to analysis as a nutrient content claim and cannot be false or misleading in any manner.

40.     Defendant's protein representations on the front package are misleading because they broadly tout protein quantity *alone* while ignoring that the poor quality nut proteins in the Products will provide far less useable protein than claimed. The claim on the front is therefore separately misleading and should never have appeared on the Product packages.

**Defendant's Marketing and Labeling of the Products Violates State and Federal Food Labeling Laws**

41.     Defendant's Products are unlawful, misbranded, and violate the Sherman Law, California Health & Safety Code § 110660, *et seq.* Defendant makes protein content claims on the front of the Product packages even though, for some of the Products, it uniformly fails to provide a statement of the corrected amount of protein per serving in the NFP calculated according to the PDCAAS method and expressed as a %DV as required by 21 C.F.R. § 101.9(c)(7)(i). Defendant's failure to comply with this requirement render its front label protein claim unlawful per se and the product misbranded.

42.     Defendant's front label protein quantity claim on all the Products is also misleading, and therefore prohibited by sections 101.13(i)(3) and (b), because it states that it provides a specific amount of protein per serving—such as "15G PROTEIN" for the Perfect Bar Dark Chocolate Chip and Peanut Butter flavor —when, in fact, after adjusting the protein content based on PDCAAS, the products will provide approximately half that much protein.

43.     Defendant's marketing, advertising, and sale of the Products violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, *et. seq.*), including but not limited to:

    a.   Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

    b.   Section 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer

to sell any falsely or misleadingly advertised food; and

c.   Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

44.   Defendant's marketing, advertising, and sale of the Products violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but not limited to:

a.   Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

b.   Section 110705 (a food is misbranded if words, statements and other information required by the Sherman Law to appear food labeling is either missing or not sufficiently conspicuous);

c.   Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

d.   Section 110765, which makes it unlawful for any person to misbrand any food; and

e.   Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

45.   Defendant has violated 21 U.S.C. § 343(a), and the standards set by FDA regulations, including but not limited to 21 C.F.R. § 101.9 (c)(7), which have been incorporated by reference in the Sherman Law, by failing to include on their product labels the nutritional information required by law.

46.   A reasonable consumer would expect that the Products provide what Defendant identifies them to provide on the product labels and that the labels would not be contrary to the policies or regulations of the State of California and/or the FDA. For example, a reasonable consumer would expect that when Defendant labels its Products with "15G PROTEIN" as it claimed on the Perfect Bar in Dark Chocolate Chip Peanut Butter flavor label, the Products would provide 15 grams of protein per serving in a form their bodies could use as protein.

47.     Consumers lack the meaningful ability to test or independently ascertain the truthfulness of Defendant's food labeling claims, especially at the point of sale. Reasonable consumers do not walk around with the PDCAAS values for various protein sources stored in their heads. Its discovery requires investigation well beyond the grocery store aisle and knowledge of food chemistry beyond that of the average consumer. An average consumer does not have the specialized knowledge necessary to ascertain that a serving of a Product does not provide the number of grams of protein that is represented on the front of the product package. An average consumer also lacks the specialized knowledge necessary to determine the PDCAAS for the Products. The average reasonable consumer had no reason to suspect that Defendant's representations on the packages were misleading. Therefore, consumers had no reason to investigate whether the Products actually do provide the amount of protein per serving that the labels claim they do and reasonably relied on Defendant's representations regarding the nature of the Products.

48.     Defendant intends and knows that consumers will and do rely upon front label claims in making their purchasing decisions. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendant has done with the claims on the Products that they contain and provide specific amounts of protein per serving.

**Defendant Misleadingly Markets the Products to Increase Profits and Gain a Competitive Edge**

49.     In making false, misleading, and deceptive representations, Defendant distinguishes the Products from its competitors' products. Defendant knew and intended that consumers would purchase, and pay a premium for, products labeled with a protein claim. By using this branding and marketing strategy, Defendant is stating that the Products are superior to, better than, and more nutritious and healthful than other products that do not make protein claims or that properly provide the required statement of the corrected amount of protein in the product as determined by the PDCAAS method and express as a %DV and otherwise do not mislead consumers about the amount of protein their products actually provide.

**Defendant Intends to Continue to Market the Products as Containing More Protein than the Products Actually Contain**

50. Because consumers pay a price premium for products that make protein claims, and also pay a premium for products that provide more protein, by labeling its Products as containing more grams of protein per serving than they actually provide, Defendant is able to both increase its sales and retain more profits.

51. Defendant engaged in the practices complained of herein to further its private interests of: (i) increasing sales of the Products while decreasing the sales of competitors that do not misrepresent the number of grams of protein contained in its products, and/or (ii) commanding a higher price for its Products because consumers will pay more for the Products due to consumers' demand for products containing more protein.

52. The market for protein products is continuing to grow and expand, and because Defendant knows consumers rely on representations about the number of grams of protein in food products, Defendant has an incentive to continue to make such unlawful and misleading representations. In addition, other trends suggest that Defendant has no incentive to change its labeling practices.

53. For example, one market analysis revealed that between 2013-2017, product launches with a protein claim grew 31%.[4]

54. To capitalize on the growing market, Defendant continues to launch new product lines and flavors to diversify its portfolio to maintain its competitive edge. Moreover, Defendant has continued to replicate its misrepresentations on new products. It is therefore likely that Defendant will continue to misleadingly advertise the Products and perpetuate the misrepresentations regarding the protein in the Products.

---

[4] https://www.bakeryandsnacks.com/Article/2018/11/26/10-key-snack-trends-to-watch?utm_source=copyright&utm_medium=OnSite&utm_campaign=copyright

**PLAINTIFFS' EXPERIENCES**

**Chong**

55.     Plaintiff Chong has purchased Perfect Bar protein bars in the Dark Chocolate Chip Peanut Butter flavor at stores in the Bay Area, including Safeway in Daly City, California and Target in Colma, California, from approximately January 2018 to approximately March 2020.

56.     Plaintiff Chong made each of her purchases of the Perfect Bar protein bar in Dark Chocolate Chip Peanut Butter flavor after reading and relying on the product front labels that promised that the bars provided "15G PROTEIN" on the front of the product package. She relied on the protein representation for each purchase and purchased each product because of the protein representations. She also believed in the truth of each representation, i.e., that the product would actually provide her the specific amount of protein on the front label in a form her body could utilize as protein.

57.     Plaintiff Chong not only purchased the Products because the labels said that they provided a specified amount of protein per serving, but she also paid more money for the Products than she would have paid had the product not unlawfully contained a protein claim, or had that protein claim not been misleading regarding the number of grams of protein it provided.

58.     Had Defendant not misrepresented (by omission and commission) the true nature of the Products, Plaintiff Chong would not have purchased them or, at a very minimum, she would have paid less for the Products.

Plaintiff Chong continues to desire to purchase protein products, including those marketed and sold by Defendant. If the Products were reformulated to provide the grams of protein that are represented on the labels, Plaintiff Chong would likely purchase them again in the future. Plaintiff Chong regularly visits stores where the Products and other protein products are sold. Because Plaintiff Chong does not know the formula for Defendant's products and cannot test whether or not the Products provide the amount of protein that is represented on the label.

**Roffman**

59.     Plaintiff Roffman has purchased Perfect Peanut Butter Cups Dark Chocolate and Milk Chocolate flavor at stores in the Bay Area, including Whole Foods on Ocean Ave. in San

Francisco, California from approximately January 2019 to approximately January 2022.

60.     Plaintiff Roffman made each of her purchases of the Perfect Peanut Butter Cups after reading and relying on the product front labels that promised that the bars provided "7G PROTEIN" on the front of the dark chocolate package and "8G PROTEIN" on the front of the milk chocolate package. She relied on the protein representation for each purchase and purchased each product because of the protein representations. She also believed in the truth of each representation, i.e., that the product would actually provide her the specific amount of protein on the front label in a form her body could utilize as protein.

61.     Plaintiff Roffman not only purchased the Products because the labels said that they provided a specified amount of protein per serving, but she also paid more money for the Products than she would have paid had the product not unlawfully contained a protein claim, or had that protein claim not been misleading regarding the number of grams of protein it provided.

62.     Had Defendant not misrepresented (by omission and commission) the true nature of the Products, Plaintiff Roffman would not have purchased them or, at a very minimum, she would have paid less for the Products.

63.     Plaintiff Roffman continues to desire to purchase protein products, including those marketed and sold by Defendant. If the Products were reformulated to provide the grams of protein that are represented on the labels, Plaintiff Roffman would likely purchase them again in the future. Plaintiff Roffman regularly visits stores where the Products and other protein products are sold. Because Plaintiff Roffman does not know the formula for Defendant's products and cannot test whether or not the Products provide the amount of protein that is represented on the label.

## CLASS ALLEGATIONS

64.     Plaintiffs bring this class action lawsuit on behalf of themselves and a proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following groups of similarly situated persons, defined as follows:

> The Class: All persons in the United States who purchased the Products between April 22, 2018 and the present.
>
> The California Subclass: All persons in the State of California who purchased the

Products between April 22, 2018 and the present.

57.   This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed classes are easily ascertainable.

65.   Numerosity: Plaintiffs do not know the exact size the Classes, but they estimate that it is composed of more than 100 persons. The persons in the Classes are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

58.   Common Questions Predominate: This action involves common questions of law and fact to the potential Classes because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led consumers to believe that the Products contained the amount of protein as represented on the Product labels. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Classes to recover. The questions of law and fact common to the Classes are:

    a.   What is the PDCAAS for the protein in the Products;

    b.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are unlawful and/or misleading;

    c.   Whether Defendant's actions violate Federal and California laws invoked herein;

    d.   Whether labeling the Products with a protein claim causes the Products to command a price premium in the market;

    e.   Whether Defendant's failure to provide a statement of the corrected amount of protein per serving in the Products sold to the Class and Subclass members was likely to deceive reasonable consumers;

    f.   Whether representations regarding the number of grams of protein in the Products are material to a reasonable consumer;

    g.   Whether Defendant engaged in the behavior knowingly, recklessly, or negligently;

    h.   The amount of profits and revenues Defendant earned as a result of the conduct;

i.   Whether Class members are entitled to restitution, injunctive and other equitable
relief and, if so, what is the nature (and amount) of such relief; and

j.   Whether Class members are entitled to payment of actual, incidental,
consequential, exemplary and/or statutory damages plus interest thereon, and if so,
what is the nature of such relief.

66.   Typicality: Plaintiffs' claims are typical of the claims of the other members of the Classes because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Classes were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

67.   Adequacy of Representation: Plaintiffs will fairly and adequately protect the interests of all Class and Subclass members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with, or antagonistic to, the interests of the Class and Subclass members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Classes. By prevailing on their own claims, Plaintiffs will establish Defendant's liability to all Class and Subclass members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and Subclass members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class and Subclass members.

68.   Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the classes may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

69.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

Plaintiffs do not plead, and hereby disclaim, causes of action under the FDCA and regulations promulgated thereunder by the FDA. Plaintiffs rely on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

**PLAINTIFFS' FIRST CAUSE OF ACTION**
**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code §
1750, *et seq.*)**
**On Behalf of Plaintiffs and the Subclass**

70.     Plaintiffs reallege and incorporate the paragraphs of this Class Action Complaint as if set forth herein.

59.     Plaintiffs bring this claim individually and on behalf of the other members of the Subclass.

71.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

72.     Plaintiffs and other Subclass members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

73.     The Products that Plaintiffs (and other similarly situated Subclass members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

74.     Defendant's acts and practices, set forth in this Class Action Complaint, led

customers to falsely believe that the Products provided nutritionally the amount of protein claimed on the product package. By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendant has violated, and continues to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code §1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold. In violation of California Civil Code §1770(a)(5), Defendant's acts and practices constitute improper representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(8), Defendant deceptively markets and advertises that, unlike other protein product manufacturers, it sells Products that provide more grams of protein than the Products actually do. In violation of California Civil Code §1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised. Finally, Defendant had a duty to disclose the corrected amount of protein per serving for all the Products in the NFP as calculated by the PDCAAS method, which Defendant failed to do. 21 C.F.R. § 101.9(c)(7)(i)-(iii).

75.     Plaintiffs request that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Subclass will continue to suffer harm. Plaintiffs and those similarly situated have no adequate remedy at law to stop Defendant's continuing practices.

76.     Plaintiffs provided Defendant with notice and a demand to correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed to do so in that, among other things, it failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly,

1    Plaintiffs seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those

2    similarly situated Subclass members, compensatory damages, punitive damages and restitution of

3    any ill-gotten gains due to Defendant's acts and practices.

4         77.    Plaintiffs also request that this Court award their costs and reasonable attorneys'

5    fees pursuant to California Civil Code § 1780(d).

6                        **PLAINTIFFS' SECOND CAUSE OF ACTION**
     **(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**
7                        **On Behalf of Plaintiffs and the Subclass**

8         78.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action

9    Complaint as if set forth herein.

10        60.    Plaintiffs bring this claim individually and on behalf of the other members of the

11    Subclass.

12        79.    Beginning at an exact date unknown to Plaintiffs, but within three (3) years

13    preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive

14    and/or misleading statements in connection with the advertising and marketing of the Products.

15        80.    Defendant made representations and statements (by omission and commission)

16    that led reasonable customers to believe that the Products that they were purchasing contained

17    more grams of protein per serving than the Products actually provided. Further, Defendant had a

18    duty to disclose the corrected amount of protein per serving in the NFP on all the Products, as

19    calculated according to the PDCAAS method, which Defendant failed to do.

20        81.    Plaintiffs and those similarly situated relied to their detriment on Defendant's

21    false, misleading and deceptive advertising and marketing practices, including each of the

22    misrepresentations and omissions set forth above. Had Plaintiffs and those similarly situated been

23    adequately informed and not intentionally deceived by Defendant, they would have acted

24    differently by, without limitation, refraining from purchasing Defendant's Products or paying less

25    for them.

26        82.    Defendant's acts and omissions are likely to deceive the general public.

27        83.    Defendant engaged in these false, misleading and deceptive advertising and

28    marketing practices to increase its profits. Accordingly, Defendant has engaged in false

advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

84.     The aforementioned practices, which Defendant used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

85.     As a direct and proximate result of such actions, Plaintiffs and the other members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

86.     Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action will not succeed. Plaintiffs and the Subclass may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiffs may not be able to establish each Subclass member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualize proof of deception or injury by absent Class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiffs and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the FAL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good

1    faith.

2        87.    Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration

3    that the above-described practices constitute false, misleading and deceptive advertising.

4        88.    Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction

5    to prohibit Defendant from continuing to engage in the false, misleading and deceptive

6    advertising and marketing practices complained of herein. Such misconduct by Defendant, unless

7    and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the

8    general public and the loss of money and property in that Defendant will continue to violate the

9    laws of California, unless specifically ordered to comply with the same. This expectation of

10   future violations will require current and future consumers to repeatedly and continuously seek

11   legal redress in order to recover monies paid to Defendant to which it is not entitled. Plaintiffs,

12   those similarly situated and/or other California consumers have no other adequate remedy at law

13   to ensure future compliance with the California Business and Professions Code alleged to have

14   been violated herein.

15                    **PLAINTIFFS' THIRD CAUSE OF ACTION**
                    **(Common Law Fraud, Deceit and/or Misrepresentation)**
16                  **On Behalf of Plaintiffs and the Class and Subclass**

17       89.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action

18   Complaint as if set forth herein.

19       61.    Plaintiffs bring this claim individually and on behalf of the other members of the

20    Class and the Subclass.

21       90.    Defendant has fraudulently and deceptively informed Plaintiffs that the Products

22   provide more grams of protein than they actually provide in a form useful to the human body.

23   Further, Defendant failed to provide a statement of the corrected amount of protein per serving in

24   the NFP, calculated according to the PDCAAS method, on all the Products, as it was required to

25   do.

26       91.    These misrepresentations and omissions were known exclusively to, and actively

27   concealed by, Defendant, not reasonably known to Plaintiffs, and material at the time they were

28   made. Defendant knew or should have known the composition of the Products, and knew or

should have known that the Products did not contain or provide the amount of protein represented on the label. Defendant's misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase Defendant's Products. In misleading Plaintiffs and not so informing Plaintiffs, Defendant breached its duty to them. Defendant also gained financially from, and as a result of, its breach.

92.     Plaintiffs and those similarly situated relied to their detriment on Defendant's misrepresentations and fraudulent omissions. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of them, or (iii) paying less for the Products.

93.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, purchase the Products.

94.     Plaintiffs and those similarly situated justifiably and reasonably relied on Defendant's misrepresentations and omissions, and, accordingly, were damaged by Defendant.

95.     As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Products.

96.     Defendant's conduct as described herein was wilful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiffs and those similarly situated.

**PLAINTIFFS' FOURTH CAUSE OF ACTION**
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Plaintiffs and the Subclass**

97.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

98.     Plaintiffs bring this claim individually and on behalf of the other members of the

1   Subclass.

2   99.     Within four (4) years preceding the filing of this lawsuit, and at all times

3   mentioned herein, Defendant has engaged, and continues to engage, in unlawful, unfair, and

4   fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent

5   business practices outlined in this complaint.

6   100.     In particular, Defendant has engaged, and continues to engage, in unlawful

7   practices by, without limitation, violating the following state and federal laws: (i) the CLRA as

8   described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman

9   Law (Article 3), including without limitation, California Health & Safety Code §§ 110390,

10  110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article

11  6), including without limitation, California Health & Safety Code §§ 110660, 110665, 110705,

12  110760, 110765, and 110770; and (v) federal laws regulating the advertising and branding of

13  food in 21 U.S.C. § 343(a), *et seq.* and FDA regulations, including but not limited to 21 C.F.R. 21

14  C.F.R. § 101.9 (c)(7), which are incorporated into the Sherman Law (California Health & Safety

15  Code §§ 110100(a), 110380, and 110505).

16  101.     In particular, Defendant has engaged, and continues to engage, in unfair and

17  fraudulent practices by, without limitation, the following: (i) misleading reasonable consumers

18  regarding the amount of protein the Products provide nutritionally in a form that humans can use;

19  (ii) unlawfully making a protein claim on the front of some of the Product packages without

20  complying with the regulatory requirements for making a protein claim set forth in 21 C.F.R.

21  § 101.9(c)(7)(i)-(iii) and incorporated by reference by California's Sherman law; and (iii) failing

22  to provide a statement of the corrected amount of protein per serving in the NFP, calculated

23  according to the PDCAAS method and expressed as a %DV, on some of the Products as required

24  by FDA regulations.

25  102.     Plaintiffs and those similarly situated relied to their detriment on Defendant's

26  unlawful, unfair, and fraudulent business practices. Had Plaintiffs and those similarly situated

27  been adequately informed and not deceived by Defendant, they would have acted differently by,

28  without limitation: (i) declining to purchase the Products, (ii) purchasing less of the Products, or

Class Action Complaint

(iii) paying less for the Products.

103.    Defendant's acts and omissions are likely to deceive the general public.

104.    Defendant engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

105.    The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

106.    As a direct and proximate result of such actions, Plaintiffs and the other Subclass members have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the Subclass members lost the amount they paid for the Products.

107.    As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

108.    Plaintiffs seek, on behalf of themselves and those similarly situated, equitable relief, including the restitution for the premium and/or full price that they or others paid to Defendant as a result of Defendant's conduct. Plaintiffs and the Subclass lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause of action because the California Sherman Law does not provide a direct cause of action, so Plaintiffs and the Subclass must allege those violations as predicate acts under the UCL to obtain relief.

109.    Plaintiffs also seek equitable relief, including restitution, with respect to their UCL "fraudulent" prong claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiffs and the Subclass may be unable to obtain monetary, declaratory and/or

injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiffs may not be able to establish each Subclass member's individualized understanding of Defendants' misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiffs and the Subclass may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendants acted in good faith.

110.    Plaintiffs seek, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

111.    Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they were not entitled. Plaintiffs and those similarly situated have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## PLAINTIFFS' FIFTH CAUSE OF ACTION
### (Unjust Enrichment)
### On Behalf of Plaintiffs and the Class and the Subclass

112.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

113.    Plaintiffs bring this claim individually and on behalf of the other members of the Class and the Subclass.

114.    Plaintiffs and members of the Class conferred a benefit on the Defendant by purchasing the Products.

115.    Defendant has been unjustly enriched in retaining the revenues from Plaintiffs' and Class members' purchases of the Products, which retention is unjust and inequitable, because Defendant falsely represented that the Products contained specific amounts of protein per serving, while failing to disclose that the Products actually provided less protein than represented. This harmed Plaintiffs and Class members because they paid a price premium as a result.

116.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class members for its unjust enrichment, as ordered by the Court. Plaintiffs and those similarly situated have no adequate remedy at law to obtain this restitution.

117.    Plaintiffs, therefore, seek an order requiring Defendant to make restitution to them and other members of the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgement against Defendant as follows:

A.    Certification of the proposed Class and Subclass, including appointment of Plaintiffs' counsel as class counsel;

B.    An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    An award of compensatory damages in an amount to be determined at trial, except

1   for those causes of action where compensatory damages are not legally available;

2         D.     An award of statutory damages in an amount to be determined at trial, except for

3   those causes of action where statutory damages are not legally available;

4         E.     An award of punitive damages in an amount to be determined at trial, except for

5   those causes of action where punitive damages are not legally available;

6         F.     An award of treble damages, except for those causes of action where treble

7   damages are not legally available;

8         G.     An award of restitution in an amount to be determined at trial;

9         H.     An order requiring Defendant to pay both pre- and post-judgment interest on any

10                 amounts awarded;

11         I.     For reasonable attorneys' fees and the costs of suit incurred; and

12         J.     For such further relief as this Court may deem just and proper.

13                                      **JURY TRIAL DEMANDED**

14   Plaintiffs hereby demand a trial by jury.

15   Dated: April 22, 2022

16                                        **GUTRIDE SAFIER LLP**

17                                      */s/Seth A. Safier/s/*

18                                      Seth A. Safier, Esq.
                                     Marie McCrary, Esq.

19                                      Hayley Reynolds, Esq.
                                       100 Pine Street, Suite 1250

20                                      San Francisco, CA 94111

21

22

23

24

25

26

27

28

Class Action Complaint

## EXHIBIT A

I, Lisa Chong declare:

1.       I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.       I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.       As set forth in my complaint, I purchased the Perfect Bar - Dark Chocolate Chip Peanut Butter flavor at a Safeway store in Daly City, California and a Target store in Colma, California on multiple occasions between January 2018 and May 2020.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 2nd Day of March, in San Francisco, California.

DocuSigned by:

*Lisa Chong*

EB1CE827512F442

Lisa Chong

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

**Exhibit B**

| Product Type | Variety/Flavor | Front Package Protein Nutrient Content Claim | DV% in NFP |
|---|---|---|---|
| Perfect Bar | Dark Chocolate Chip Peanut Butter | 15g | 21% |
| Perfect Bar | Peanut Butter | 17g | 21% |
| Perfect Bar | Coconut Peanut Butter | 16g | 19% |
| Perfect Bar | Pumpkin Pie | 14g | 20% |
| Perfect Bar | Salted Caramel | 12g | 20% |
| Perfect Bar | Almond Butter | 13g | 15% |
| Perfect Bar | Dark Chocolate Almond Butter | 12g | 14% |
| Perfect Bar | Chocolate Mint | 14g | 20% |
| Perfect Bar | Blueberry Cashew | 12g | 19% |
| Perfect Bar | Chocolate Hazelnut Crisp | 12g | 16% |
| Perfect Bar | Chocolate Chip Cookie Dough with Sea Salt | 14g | 20% |
| Perfect Bar Snack Size | Peanut Butter | 6g | 8% |
| Perfect Bar Snack Size | Dark Chocolate Chip Peanut Butter | 6g | 8% |
| Perfect Kids Bar | Chocolate Chip | 7g | No DV |
| Peanut Butter Cups | Dark Chocolate with Sea Salt | 7g | No DV |
| Peanut Butter Cups | Milk Chocolate | 8g | No DV |
| Peanut Butter Cups | Dark Chocolate Mint | 7g | No DV |