**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
  anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEHVA ROFFMAN and LISA CHONG, as individuals, on behalf of themselves, the general public, and those similarly situated, | CASE NO. 3:22-cv-02479-JSC |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| v. | Hon. Jacqueline Scott Corley |
| PERFECT BAR, LLC, | Hearing Date:  January 12, 2023 |
| Defendant. | Hearing Time:  9:00 a.m. |
| | Courtroom:  Remote (Zoom) |

1

2

# TABLE OF CONTENTS

3

I.        INTRODUCTION.................................................................................................. 1

II.       BACKGROUND ................................................................................................... 3

        A.   Protein Quality Generally. ........................................................................ 3

        B.   The Regulatory Framework. ..................................................................... 3

        C.   Perfect Bar's Labels. ................................................................................. 4

        D.   Defendant's First Motion to Dismiss. ...................................................... 5

        E.   The FAC Added New Reliance Allegations. ............................................ 7

III.      LEGAL STANDARD ........................................................................................... 8

IV.       ARGUMENT......................................................................................................... 8

        A.   Without a %DV, Perfect's Labels Are Unlawful. .................................. 16

        B.   Plaintiffs Adequately Allege Reliance on the Nutritional Fact Panel ...... 8

        C.   The Plaintiffs' Interpretation of Defendant's Labels Was Reasonable ........ 12

V.        CONCLUSION ................................................................................................... 19

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

## <u>TABLE OF AUTHORITIES</u>

3

*Cases*

4  *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381 (9th Cir. 1995)................ 13

5  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 8

6  *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950 (N.D. Cal. 2018) ............................................. 9

7  *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................. 8

8  *Brown v. Van's Int'l Foods, Inc.* ("*Van's II*"), No. 22-cv-00001-WHO, 2022 U.S. Dist. LEXIS

9        154627 (N.D. Cal. Aug. 22, 2022)........................................................................... passim

10  *Bush v. Liberty Life Assurance Co. of Bos.*, 130 F. Supp. 3d 1320 (N.D. Cal. 2015) .................. 17

11  *Bush v. Mondelēz Int'l, Inc.*, No. 16-2460, 2016 WL 5886886 (N.D. Cal. Oct. 7, 2016) ........... 15

12  *Chong v. Kind LLC*, 585 F. Supp. 3d 1215 (N.D. Cal. 2022) .................................................. 6, 10

13  *Daniel v. Ford Motor Co.*, 806 F.3d 1217 (9th Cir. 2015) ...................................................... 1, 9

14  *Guido v. Koopman*, 1 Cal. App. 4th 837 (1991) ........................................................................ 12

15  *In re Tobacco II Cases,* 46 Cal. 4th 298 (Cal. 2009) .................................................................... 9

16  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988 (9th Cir. 2018) .......................................... 11

17  *Madani v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-07287-HSG, 2019 WL 3753433 (N.D. Cal.

18        Aug. 8, 2019) ..................................................................................................................... 8

19  *Mantikas v. Kellogg Co.*, 910 F.3d 633 (2d Cir. 2018)............................................................... 10

20  *Maxwell v. Unilever United States, Inc.*, No. 12-1736, 2018 WL 1536761 (N.D. Cal. Mar. 29,

21        2018) ................................................................................................................................ 15

22  *Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004 (N.D. Cal. 2020) .............................................. 17

23  *Nacarino v. Kashi Co.*("Nacarino"), No. 21-cv-07036-VC, 2022 WL390815 (N.D. Cal. Feb. 9,

24        2022), appeal filed, No. 22-15377 (9th Cir. Mar. 14, 2022)............................................. 6

25  *Pardini v. Unilever United States, Inc*., 961 F. Supp. 2d 1048 (N.D. Cal. 2013)........................ 11

26  *Pino v. Birch Benders, LLC,* No. 22-cv-02194-TSH, 2022 U.S. Dist. LEXIS 180804 (N.D. Cal.

27        Oct. 3, 2022) ...................................................................................................................... 2

28

*Pratt v. Whole Food Mkt. Cal., Inc.*, No. 5:12-cv-05652-EJD, 2015 U.S. Dist. LEXIS 134968
    (N.D. Cal. Sep. 30, 2015)...................................................................................... 15

*Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015).......................................................... 19

*Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123 (N.D. Cal. 2012) ...................... 8, 13

*Thomas v. Costco Wholesale Corp.*, No. 21–55335, 2022 WL 636637 (9th Cir. Mar. 4, 2022) . 15

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)................................................ 10, 11

### Rules

Fed. Rule Civ. Proc. 12(g)(2)....................................................................................... 17

Fed. Rule Civ. Proc. 12(h)(2)....................................................................................... 17

### Regulations

21 C.F.R. § 101.9(c)(7)(i) .............................................................................. 3, 4, 17, 18

21 C.F.R. § 101.9(c)(7)(ii) ........................................................................................... 3

56 Fed. Reg. 60366 ...................................................................................................... 3

58 Fed. Reg. 2302 .................................................................................................. 4, 18

58 Fed. Reg. 23310 ................................................................................................ 4, 18

1    **I.   INTRODUCTION**

2        In its Order on Defendant's prior motion to dismiss, this Court held that "Plaintiffs

3    plausibly allege that [Perfect Bar's] front-label protein claims are unlawful without corresponding

4    PDCAAS [i.e., "Protein Digestibility Corrected Amino Acid Score"] figures on the nutrition facts

5    panel" (ECF 34 at 6), and that the claims were neither expressly nor impliedly preempted. ECF

6    34 at 6, 8. Nevertheless, the Court dismissed the claims because Plaintiffs had failed to plead

7    reliance on the nutrition facts panel, which the Court held was necessary. *Id*. at 10. Plaintiffs

8    requested leave to amend to cure this factual deficiency; Defendant opposed, arguing that

9    Plaintiffs' initial allegation of reliance on the front label protein claim made reliance on the

10   nutritional fact panel implausible. ECF 22 at 2. The Court granted leave, holding that

11   "Defendant's argument that the defects could not be cured by amendment does not make sense;

12   that Plaintiffs relied on the front-label protein claims does not mean that they could not also have

13   read and relied on the nutrition facts panel and its omission." ECF 34 at 10.

14       As such, the only real issue before the Court is whether Plaintiffs' amendments establish

15   their reliance on the NFP. To do so, they need only allege that they would have observed the

16   omitted information had it been disclosed, and that they would have behaved differently as a

17   result. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015). Plaintiffs undoubtedly

18   satisfy this low bar. They each allege that they "looked at and read" the Products' NFPs before

19   purchasing them for the first time; that they "regularly check the NFP, including the %DV column

20   for protein" before purchasing any product; that they use the %DV when one is provided to

21   comparison shop among different products; and that, had Defendant provided a %DV, they

22   "would not have purchased" or "would have paid less" for the Products at issue here. The

23   Amended Complaint even alleges specific nutritional needs based on Plaintiffs' activities and

24   health concerns (e.g., marathon running, yoga, age-related muscle loss) that motivated them to

25   read the products' front and back labels, i.e., why the information was important to them. Courts

26   have found virtually identical allegations sufficient to establish reliance on an NFP omission. See

27   *Brown v. Van's Int'l Foods, Inc.* ("*Van's II*"), No. 22-cv-00001-WHO, 2022 U.S. Dist. LEXIS

28   154627, at *9-11 (N.D. Cal. Aug. 22, 2022) (finding allegations plaintiff read front label and back

label omitting %DV sufficient to establish actual reliance on NFP with omitted %DV); *Pino v. Birch Benders, LLC,* No. 22-cv-02194-TSH, 2022 U.S. Dist. LEXIS 180804, at *8-9 (N.D. Cal. Oct. 3, 2022) (same).

None of Defendant's arguments to the contrary are persuasive. Defendant's first approach is to re-argue that pleading reliance on the front of the label is "inconsistent" with reliance on the back. But this is no more persuasive now than it was when the Court rejected the argument and granted Plaintiff leave to amend. Defendant's second approach is to try to reverse engineer a rule that reliance on the NFP is always implausible *as a matter of law* based on Ninth Circuit cases that hold that "fine print" disclosures in a product's ingredient list do not necessarily preclude a claim that front label advertisements are misleading. But the fact that some consumers plausibly miss disclosures on the back of a product does not make it implausible that other consumers read disclosures on the back. And here, Plaintiffs allege that they did look for this information, which specific allegations the Court must accept as true. Defendant's final approach is to argue that any reliance would be "unreasonable" because the fact that Plaintiffs allege they cared about protein somehow turned them into protein science experts who "would understand that most protein is not fully digestible and that proteins can vary heavily in digestibility and amino acid composition." ECF 44 at 9. This not only depends on facts completely outside the bounds of the Amended Complaint but requires the Court to assume as false the Amended Complaint's allegations that average consumers generally—and the named Plaintiffs in particular—lack knowledge about the nutritional quality of protein. The Court cannot do so.

Finally, despite the Court's reasoned analysis and clear ruling that Defendant's front label protein claims are unlawful in the absence of the required information in the NFP (ECF 34 at 3-6), Defendant attempts to re-litigate that issue here. But Defendant has not moved for leave to seek reconsideration of the Court's prior order, has made no attempt to satisfy the standard for reconsideration, and simply rehashes ground the parties have already covered. It is inappropriate to use this second motion to dismiss as a backdoor motion for reconsideration and the Court can simply ignore the argument. Nevertheless, Defendant is still wrong. It tries to frame the unlawfulness as relating solely to the NFP, but that makes no sense. The regulations make clear

that it is the *combined* conduct that is unlawful. Only the *presence* of a protein claim triggers the %DV requirement, and as such the *presence* of the protein claim in the *absence* of the %DV is necessarily unlawful, as this Court already correctly concluded. In other words, there is no scenario where it is lawful to make a front label protein claim while failing to provide the mandatory %DV for protein in the NFP, which is precisely what Defendant did here, and Plaintiffs can state a claim for that unlawfulness. For all of these reasons, the Court should deny Defendant's motion to dismiss the Amended Complaint.

## II.    BACKGROUND

### A.    Protein Quality Generally.

As explained in Plaintiffs' opposition (ECF 21 at 3) to Defendant's first motion to dismiss, proteins come in many different varieties, some of which humans can use more fully and readily than others. ECF 37, ¶ 24; *see also* 21 C.F.R. § 101.9(c)(7)(i)–(ii). Humans cannot produce nine "essential" amino acids, which must be obtained through the diet. ECF 37 at ¶ 25. Lacking even one essential amino acid will prevent protein synthesis from occurring. *Id.* at ¶ 26. Once the body uses up the limiting essential amino acid from a protein source, the remainder of that protein becomes useless for protein synthesis. *Id.* "[P]rotein quality is a measure of the content, proportion, and availability of essential amino acids in food protein." 56 Fed. Reg. 60366, § B. A protein source's quality also depends upon how digestible it is. *Id.* at ¶ 27. Non-digestible protein passes through the body as waste. *Id*.

The FDA-mandated measure of protein quality is "PDCAAS," which accounts for both the proportion of essential amino acids in the protein source and its digestibility. PDCAAS combines these two facets into a discount factor (e.g., 0.5) that, when multiplied by protein quantity in grams, shows how much protein a product actually provides for human nutritional purposes, also in grams. *Id*. at ¶ 29. FDA regulations refer to this as the "corrected amount of protein per serving." *See* 21 C.F.R. § 101.9(c)(7)(i)–(ii).

### B.    The Regulatory Framework.

The FDA regulates what manufacturers can, and sometimes *must* say about protein, both inside and outside the NFP. The FDA permits protein claims outside of the nutritional fact panel

*only if* the manufacturer satisfies certain requirements. Section 101.9(c)(7)(i) provides that if a product makes a "protein claim" the manufacturer "*shall*" (1) calculate the "corrected amount of protein per serving" using the PDCAAS method, and (2) provide a "statement of the corrected amount of protein" inside the NFP immediately adjacent to the protein quantity figure "expressed as" a %DV. In other words, a protein claim on the front of a package without a corresponding statement of the corrected amount of protein in the NFP is unlawful.

The FDA regulations that govern front label claims (i.e., nutrient content claims) also provide that failure to comply with section 101.9(c)(7)(i) bars making front label protein claims. Section 101.13(n) states that "*[n]utrition labeling in accordance with § 101.9, § 101.10, or § 101.36, as applicable, shall be provided for any food for which a nutrient content claim is made*." Section 101.13(b) provides that "*a nutrient content claim[] may not be made on the label or in labeling of foods unless the claim is made in accordance with this regulation*" [i.e., § 101.13], which includes § 101.13(n), and, thus, by extension, § 101.9(c)(7)(i). These regulations make the ability to put a nutrient content claim on the front label *contingent* upon compliance with § 101.9 and confirm that Perfect Bar could not make front label protein claims because it did not state the "corrected amount of protein" in the NFP in compliance with § 101.9(c)(7)(i). Indeed, the FDA has explicitly stated that section 101.13(n) means a manufacturer can only make "a nutrient content claim . . . on the label or in labeling of a food, *provided* that the food bears nutrition labeling that complies with the requirements in proposed § 101.9." 58 Fed. Reg. 2302, 2310 (emphasis added).

The Court examined these regulations in its Order on the first motion to dismiss, and held that "Plaintiffs plausibly allege that the *front-label protein claims are unlawful* without corresponding figures on the nutrition facts panel." ECF 34 at 6 (emphasis added).

## C. Perfect Bar's Labels.

Perfect Bar touts protein content on the front labels of many of its products. ECF 1 at ¶ 2; Ex. B to ECF 1. Perfect Bar's Dark Chocolate Chip Peanut Butter Bar[1] prominently advertises "15G PLANT-BASED protein." *Id*. Similarly, its Chocolate Chip Perfect Kids Bar and Dark

---

[1] All the products are sold under the "PERFECT" brand name. *See* Ex. B to ECF 1.

Chocolate Mint Peanut Butter Cup advertise "7G Protein" on their labels. *Id.* But nowhere on the packaging—in the NFP or elsewhere—does Perfect Bar include any information on the product's poor protein quality or low PDCAAS score. *Id.* at ¶ 7. Perfect Bar's products use protein sources that typically have PDCAAS scores of between 0.4 and 0.5, which means that the corrected amount of protein per serving is only between 6–7.5 grams for the "15G Protein" Perfect Bar and 2.8–3.5 grams for the Kids Bar and Peanut Butter Cup products. *Id.* at ¶¶ 5-6. Accordingly, at least **half** of the protein Perfect Bar advertises on its products' labels is useless to humans. *Id.* at ¶¶ 6-7. Perfect Bar's protein claims are unlawful.

### D.      Defendant's First Motion to Dismiss.

Plaintiffs' original complaint included allegations that Plaintiffs' front label protein content claims were misleading under the UCL, CLRA, FAL, and common law, as well as unlawful under the UCL and Sherman Law. ECF 1. Defendant moved to dismiss the Complaint in its entirety, arguing that the FDCA and FDA regulations expressly and impliedly preempted both the misleading and unlawful claims. ECF 18. The Court granted that motion as to preemption in part, holding that FDA regulations allowed the use of nitrogen-method-based protein values on front labels, thereby expressly preempting Plaintiffs' various misleading claims under the UCL, CLRA, FAL, and common law. ECF 34.

But the Court denied the motion with respect to Plaintiffs' unlawful-prong UCL claims. *Id.* at 4-6. The Court first noted that, while § 101.9 regulates information that appears in the nutritional facts panel, § 101.13 regulates information that appears elsewhere on a product label, including "nutrient content claims." *Id.* The Court not only concluded that Perfect Bar's front label protein claims were nutrient content claims, but also noted that under *Reid*, "the general rule is that nutrient content claims are not permitted on food labels," and may be made only "subject to the requirements for nutrient content claims," including "[n]utrition labeling in accordance with § 101.9." ECF 34 at 4 (citing 21 C.F.R. §§101.9(c)(7)(i), 101.13(c); and 101.13(n)).

The Court found that Plaintiffs had pled a plausible violation of 21 C.F.R. § 101.9(c)(7):

> Plaintiffs allege that Defendant states the amount of protein, calculated using the nitrogen method, on the front label of its products. The amount of protein, calculated using the nitrogen

method, is "permitted by § 101.9 . . . to be declared in nutrition labeling," meaning the nutrition facts panel. 21 C.F.R. §101.13(c). Because Plaintiffs allege it appears "elsewhere"—on the front label—"it is a nutrient content claim and is subject to the requirements for nutrient content claims." One such requirement is that "if a protein claim is made," then the amount of protein, calculated using the PDCAAS and expressed as a percent daily value, "shall" appear on the nutrition facts panel. *Id*. §101.9(c)(7). Plaintiffs allege no such information appears on the nutrition facts panel of Defendant's products. Thus, Plaintiffs plausibly allege Defendant's conduct does not comply with Section 101.9(c)(7) because it puts nitrogen-method protein claims on the front label without the corresponding PDCAAS figures on the nutrition facts panel.

ECF 34 at 4 (internal citations to original complaint omitted).

Citing other cases[2] noting that front-label nutrient content claims trigger a requirement to include PDCAAS figures in the nutritional facts panel, the Court concluded that Plaintiffs' claim was both plausible and not preempted:

Accordingly, Plaintiffs plausibly allege that the front-label protein claims are unlawful without corresponding PDCAAS figures on the nutrition facts panel. Because the alleged conduct is prohibited by FDA regulations, state law claims based on that conduct are not expressly preempted. See *Hawkins*, 906 F.3d at 769–7

ECF 34 at 5.

The Court dismissed the unlawful prong claims solely due to Plaintiffs' failure to plead reliance on the back label, but it gave Plaintiffs leave to amend to include such allegations. *Id*., at 10. Defendant argued that the amendment would be futile, because it would "contradict their profession that they purchased Perfect Bar's products in reliance on the front-label protein claims." ECF 22 at 2, 12-13. But the Court rejected this notion. As the Court held, "Defendant's argument that the defects could not be cured by amendment does not make sense; that Plaintiffs relied on the front-label protein claims does not mean that they could not also have read and relied on the nutrition facts panel and its omission." ECF 34 at 10.

---

[2] See ECF 34 at 5-6 (citing *Van's II*, 2022 U.S. Dist. LEXIS 154627 at *14; *Chong v. Kind LLC*, 585 F. Supp. 3d 1215, 1218 (N.D. Cal. 2022), and *Nacarino v. Kashi Co.*("Nacarino"), No. 21-cv-07036-VC, 2022 WL390815, at *4 (N.D. Cal. Feb. 9, 2022), appeal filed, No. 22-15377 (9th Cir. Mar. 14, 2022)

### E.   The FAC Added New Reliance Allegations.

The FAC includes robust allegations as to Plaintiffs' reliance of the applicable claims at issue in the case. As explained above, Plaintiffs claims allege that Perfect Bar made two unlawful statements: (1) the front label protein claim and (2) the back-label NFP that omitted the PDCAAS-based %DV. See ECF 37, ¶¶ 18-52, 77.

Plaintiffs allege they made their purchases after reading and relying on the front label protein claims. *Id*. at ¶¶ 54-56, 61-63. Plaintiffs each "believed the truth of each representation, i.e., that the product would actually provide [] the specific amount of protein claimed on the front labels in a form her body could utilize as a protein." *Id*. Plaintiffs allege they would "would not have been drawn to the Products and would not have purchased them" "[h]ad Defendant complied with the law and not made the protein claims on the front of its packages." *Id*.

Plaintiffs also allege that they read the NFP, would have seen a %DV had Perfect Bar disclosed it, and that they would have changed their behavior as a result. They each allege that they "looked at and read" the NFP on the Perfect Bar products they purchased, and that they "regularly check[] the NFP before purchasing any product for the first time, including the %DV column for protein when manufacturers provide it." ECF 37 at ¶¶ 55, 62. Plaintiffs "use[] that information as a basis of comparison between similar products." *Id*. The Amended Complaint also alleges how the %DV, specifically, is material to their purchase choices. Plaintiffs allege that when a manufacturer provides the %DV, they "will always choose the product that provides more of the recommended daily value of protein (i.e., has a higher %DV for protein). *Id*. When it is not provided, Plaintiffs "go off of the stated grams of protein" and "assume[] that all [the] disclosed grams are in a form [their] bod[ies] can use as protein." *Id*.

The FAC also discusses the three products purchased specifically (i.e., for Plaintiff Chong, Perfect Bar protein bars in the Dark Chocolate Chip Peanut Butter flavor; for Plaintiff Roffman, Perfect Peanut Butter Cups Dark Chocolate and Milk Chocolate flavors). Each Plaintiff was looking for a product that would provide a specific number of grams of "useable protein per serving." *Id*. ¶¶ 56, 62. Each Plaintiff would not have bought the Perfect Bar products "had [they] seen that the product provided only 15% (Chong) or 8% (Roffman) or less of the daily value of

protein." *Id*. Plaintiffs also would have used the %DV to comparison shop to cross-reference with other products in order to select the product with the higher %DV. *Id*.

Neither Plaintiff claimed to be an expert in protein digestibility. In fact, each Plaintiff alleged that "When a manufacturer does not provide a %DV for protein, she can only go off of the stated grams of protein, and she assumes that all of those disclosed grams are in a form her body can use as protein." *Id*. Due to the absence of the %DV, the products led Plaintiffs to believe the products consisted of high quality proteins and that they were receiving all the advertised protein. *Id*.; see also *id.*, ¶¶ 56, 63 ("Without the statement of the corrected amount of protein per serving in the form of a %DV, the only information plaintiff had about the Products was the 15 gram protein quantity claim, and she believed she was receiving the full amount of that quantity in a form her body could use."). Neither Plaintiff had *any reason* to believe that the products were made of anything other than high quality protein, or that the Products would provide less protein to them nutritionally than the full amount listed on both the front and back labels. *Id.*

## III.   LEGAL STANDARD

To survive a motion to dismiss, a complaint need only contain "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating plausibility, "the court must presume all factual allegations are true and draw all reasonable inferences in favor of Plaintiff." *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123, 1136 (N.D. Cal. 2012) (citing *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678).

## IV.   ARGUMENT

### A.   Plaintiffs Adequately Allege Reliance on the Nutritional Fact Panel

Plaintiffs' allegations are more than sufficient to establish reliance on the omission of the %DV in the NFP for their claims that the NFP was unlawful. As several courts have noted, "[t]he standard for pleading reliance on account of an omission is low." *Van's II*", 2022 U.S. Dist. LEXIS 154627 at *14, quoting *Madani v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-07287-HSG, 2019 WL 3753433, at *11 (N.D. Cal. Aug. 8, 2019). A plaintiff establishes reliance on an

omission by alleging that "had the omitted information been disclosed, [he or she] would have been aware of it and behaved differently." *Daniel*, 806 F.3d at 1225; *Baranco v. Ford Motor Co.*, 294 F. Supp. 3d 950, 967 (N.D. Cal. 2018) (summarizing California law on reliance). Plaintiffs easily satisfy that standard here.

Each Plaintiff alleges that she "looked at and read the NFP" prior to her purchase of the respective products. FAC ¶¶ 55 & 62. Furthermore, each Plaintiff alleges that they have a regular habit of checking the %DV, and that "had Defendant adequately disclosed the corrected amount of protein per serving for each Product expressed as a %DV, as FDA regulations require, Plaintiff[s] Roffman [and Chong] would not have purchased the products or would have, at minimum, paid less for them." *Id*. Because these allegations demonstrate that Plaintiffs would have "behaved differently" had the %DV been disclosed, they, support a finding of reliance at the pleading stage in-and-of-themselves. *Daniel*, 806 F.3d at 1225; *see also In re Tobacco II Cases,* 46 Cal. 4th 298, 326 (Cal. 2009) (reliance is an essential element of both the UCL and CLRA and "is proved by showing that the defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-producing conduct"). At least two other Courts to analyze this issue  have held that virtually identical NFP reliance allegations were sufficient. *See Van's II*, 2022 U.S. Dist. LEXIS 154627, at *15-18 (denying motion to dismiss where complaint "plausibly allege[d] that she would have relied on the digestibility-adjusted protein statement in the Nutrition Facts Panel and behaved differently had it not been omitted"); *Pino,* 2022 U.S. Dist. LEXIS 180804, at *8-9. ("Plaintiffs allege that they 'regularly check[] the NFP before purchasing any product for the first time, including the %DV column for protein' and they 'use that information as a basis of comparison between similar products.' Plaintiffs also allege that they would have used the %DV 'as a basis to compare similar products and would have chosen instead to purchase one with a higher %DV' and, had Plaintiffs known the products contained less protein, Plaintiffs 'would not have purchased the product[s] or, at a minimum, [they] would have paid less for [them].' These allegations are sufficient to assert injury and reliance for Plaintiffs' NFP Omissions Claims.").

Perfect Food's arguments for why the reliance allegations are purportedly deficient are devoid of logic. First, Defendant contends that Plaintiffs' allegations are implausible because they already pled reliance on the products' front labels, and amended to include reliance on the back label only in response to the Court's Order on the prior motion to dismiss. But Plaintiffs never alleged that they relied *solely* on the front labels, so the NFP reliance allegations create no contradiction.[3] Indeed, as noted above, this Court has already held that Plaintiffs' prior allegations of reliance on front label did not "mean that [Plaintiffs] could not also have read and relied on the nutrition facts panel and its omission." ECF 34 at 10. Judge Orrick similarly rejected a virtually identical argument in *Van's II*, holding that "alleg[ing] that she 'read[] and rel[ied]' on the front label claim does not undermine her allegation that she 'looked at and read the [Nutrition Facts Panel].'" 2022 U.S. Dist. LEXIS 154627, at *17. Simply put, there is no factual basis to conclude that Plaintiffs' allegations that they read and relied on the NFPs are implausible.

While claiming to be "mindful" of the Court's prior rejection of this exact same argument, Defendant argues that "common sense" dictates that the Court was wrong, and consumers do not rely on NFPs *as a matter of law*. It does so based on out of context quotes from an FDA guidance letter and two inapposite cases. ECF 44 at 8. Defendant's logic is specious. It does not follow from the statement that "a reasonable consumer should not be *expected* to consult the [NFP]"— originally made in *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008), and later quoted by *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018)—that it is *implausible* consumers would *ever* do so. Nor does it follow from the legal rule adopted by *Williams* and *Mantikas* (i.e., that fine print on a back label cannot necessarily cure a prominent misleading front label claim) that no one would ever look at NFPs *as a matter of law*. Defendant's argument is a house of cards, built on the false proposition that *Mantikas* and the FDA's guidance letter (noting only how

---

[3] Defendant attacks Ms. Chong's credibility (ECF 44 at 8 n.2) on the ground that she did not plead reliance on the NFP in *Chong v. KIND LLC*, Case No. 21-4528 (N.D. Cal.) (see Defendant's RFJN (ECF 34), Ex. 2). Unlike this Court, *KIND* held Chong's unlawful claims impliedly preempted, so Chong never had an opportunity to plead reliance on the NFP there. Compare *Kind*, 585 F. Supp. 3d at 1219-20 (finding implied preemption), with ECF 34 at 8 (finding none). That difference is no reflection on Ms. Chong's credibility, nor the plausibility of her allegation that she read the NFP on the products at issue in this case.

difficult it is to correct false front of label advertising) stand for the proposition that it is implausible that consumers would ever read NFPs and that therefore omitting required disclosures in the NFP is without legal consequence.  Nothing in either of those sources comes close to the position Defendant advocates.[4]

Next, Defendant erroneously argues that "just as it is not plausible to expect a consumer to review the 'small print on the side of the box' to correct a misrepresentation on the front of the box, it is not plausible that a consumer would rely on the same 'small print' about the product's protein content in lieu of a prominent—and accurate—protein claim on the front label." ECF 44 at 8-9, citing *Williams*, 552 F.3d at 939. But this sleight of hand finds no support in *Williams*. *Williams* held that "[t]he ingredient list appears to comply with FDA regulations and certainly ***serves some purpose***" (emphasis added), noting that said purpose was to provide additional detail beyond claims made on the front label. Here, Perfect's NFP does not comply with FDA regulations, and therefore fails to provide the additional details about protein quality ***that it was required to provide***. The FDA's assumption that consumers would read and rely on this back label disclosure is self-evident from the fact the requirement exists. If it were implausible that consumers would ever read NFPs, there would be no rational basis for FDA to require them.

*Pardini*, the one other case Defendant cites, is also distinguishable. That case found dismissal was warranted because "Plaintiff has not alleged she ever looked at the nutrition panel." *Pardini v. Unilever United States, Inc*., 961 F. Supp. 2d 1048, 1060 (N.D. Cal. 2013). Here, by contrast, Plaintiffs alleged precisely that that they "looked at and read" the NFP, including the

---

[4] Defendant's request for the Court to take judicial notice of factual conclusions contained within the FDA guidance document is also improper. "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). More specifically, "a court cannot take judicial notice of *disputed facts contained in such public records*." *Id.* (emphasis added). Defendants are trying to use a statement in the FDA document— "that with FOP [front of package] labeling, people are less likely to check the Nutrition Facts label"—to contradict Plaintiffs' allegations that here they did review the NFP. Plaintiff's clearly dispute the factual conclusion that Defendant is attempting to draw from the document, and therefore it cannot be noticed. *See id.* at 1001 ("To be sure, as an agency report, the 2014 EMA Report is generally susceptible to judicial notice. . . . [but] [t]he district court abused its discretion in judicially noticing [a specific] fact on the basis of the 2014 EMA Report.").

the %DV column for protein, and that they would have behaved differently had Defendant provided a %DV for protein. Plaintiffs also allege that information provided in the NFP was material to their decision-making because they believed the product provided all the protein claimed. Those facts, which the Court must assume are true in this motion to dismiss, explain why reliance is established here, but was not in *Pardini*.

Defendant's remaining implausibility arguments boil down to meritless *ad hominem* attacks suggesting that Plaintiff and/or their counsel are lying. These arguments warrant little discussion. The mere fact that Plaintiffs or their counsel are pursuing similar claims against other manufacturers does not make Plaintiffs' allegations of reliance implausible. Similarly, Defendant's criticism of the allegations as "cookie-cutter" has no bearing on plausibility. Lawyers often use form language in complaints to ensure that legal standards are met and to reduce errors. That does not make allegations involving standardized language implausible.

### B.     The Plaintiffs' Actual Reliance on Defendant's Labels Was Reasonable

Reasonableness of reliance is ordinarily a question of fact. *Guido v. Koopman*, 1 Cal. App. 4th 837, 843 (1991).[5] "Whether reliance was justified in a particular circumstance 'may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts.'" *Van's II*, 2022 U.S. Dist. LEXIS 154627, at *19, quoting *Singh v. Google LLC*, No. 16-cv-03734-BLF, 2018 WL 984854, at *6 (N.D. Cal. Feb. 20, 2018), and *Guido*, 1 Cal. App. 4th at 843.

Defendants argue that Plaintiffs' allegations are implausible because they are "based on their own unreasonable assumptions." ECF 44 at 9. More specifically, Perfect Bar argues that Plaintiffs are "protein conscious consumer[s]" who "would understand that most protein is not fully digestible and that protein can vary heavily in digestibility and amino acid composition." *Id*. From that, Defendant asserts that it is "patently unreasonable" for anyone to conclude that

---

[5] Plaintiff is aware that Defendant is not arguing the Amended Complaint fails to establish "*reasonable reliance*," an element of deception claims, but that Plaintiffs' *actual reliance*—required for standing—is unreasonable. See, e.g., *Van's II*, 2022 U.S. Dist. LEXIS 154627, at *17 n.3 (discussing distinction between actual and reasonable reliance). There is, however, no justification for judging the reasonableness of actual reliance by a different standard than the reasonableness of the reliance element of a deception claim.

"all of [the] disclosed grams [of protein in its front label protein content claims] are in a form [their] body can use as protein." *Id*.

This argument is rife with errors. As a starting point, there is no legal or factual basis for judging reasonableness from the viewpoint of "protein-conscious consumers" a term the defendant just made up. (ECF 44 at 9-10.) Moreover, motions to dismiss are limited to the facts pled in the Complaint, which must be accepted as true, with all inferences drawn in favor of the Plaintiff. *Theranos*, 876 F. Supp. 2d at 1136; *Allarcom Pay Television, Ltd. v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995) ("Review [under Rule 12(b)(6)] is limited to the contents of the complaint."). But Defendants' assertion that so-called "protein conscious consumers" are necessarily experts in the science of protein digestibility and therefore understand the differences in the amino acid profiles of various protein sources and how they are absorbed in the human body are again facts the Defendant simply conjures out of thin air—not the Amended Complaint. In fact, the Amended Complaint alleges the opposite—i.e., that "reasonable consumers" are *not* experts in protein digestibility:

> 45.   Consumers lack the meaningful ability to test or independently ascertain the truthfulness of Defendant's food labeling claims, especially at the point of sale. Reasonable consumers do not walk around with the PDCAAS values for various protein sources stored in their heads. Its discovery requires investigation well beyond the grocery store aisle and knowledge of food chemistry beyond that of the average consumer. An average consumer does not have the specialized knowledge necessary to ascertain that a serving of a Product does not provide the number of grams of protein that is represented on the front of the product package. An average consumer also lacks the specialized knowledge necessary to determine the PDCAAS for the Products. The average reasonable consumer had no reason to suspect that Defendant's representations on the packages were misleading or unlawful. Therefore, consumers had no reason to investigate whether the Products actually do provide the amount of protein per serving that the labels claim they do and reasonably relied on Defendant's representations regarding the nature of the Products.

ECF 37, ¶ 45.  These allegations, which the Court must accept as true at the pleading stage, preclude the possibility that Plaintiffs, or any ordinary consumers, are experts in protein nutrition.

Moreover, Defendant's assumption that caring about eating sufficient protein equates to being an expert in protein digestibility is a complete non-sequitur. The mere fact that someone has decided they need to consumer more protein in their diet does not mean they possess specialized knowledge of the biochemistry of protein digestion. Judge Orrick rejected a similar argument that being a vegan somehow conferred specialized food science knowledge about plant protein digestibility. *See, e.g.*, *Van's II*, 2022 U.S. Dist. LEXIS 154627, at *19-22 (rejecting argument that being vegan and interested in protein intake meant Plaintiff "knows that plant-based protein may not contribute equally to 'recommended daily value' of protein as compared to other sources" as "stretch[ing] too far"). Furthermore, the two Plaintiffs in this case were seeking high protein foods for different reasons (marathon running vs. yoga and age-related muscle loss); the Court simply cannot make the factual and logical leap that these disparate motivations necessarily mean that both Plaintiffs knew about the digestibility of various amino acid profiles and the specific amino acid profiles of the proteins in Defendant's products.

In short, Defendant inappropriately asks the Court to rule on fact-dependent questions at the pleading stage based on facts the Defendant simply invents out of whole cloth. For example, Defendants ask the Court to rule that it is "not remotely reasonable" to interpret a "15 G PROTEIN" label claim to mean that product contains "15 G' of digestible protein. They also argue it is "patently unreasonable" to conclude that "all of [the] disclosed grams are in a form [each Plaintiff's] body can use as a protein." But they never explain why this is "not remotely reasonable" and "patently unreasonable," they just assert it is so. In truth, it is entirely reasonable for a consumer who purchases a protein bar labeled as containing "15 G PROTEIN" to believe that, upon eating that protein bar, their body will absorb and digest 15 grams of protein. That is presumably a primary reason they bought the protein bar, and all they are doing is taking the label at face value.

Defendant's motion also involves the logical fallacy that, because "most proteins are not fully digestible," "Plaintiffs could not believe that every gram of protein stated in the Nutrition Facts panel is fully digestible." ECF 37 at 9-10. In addition to relying on a false assertion that the Plaintiffs knew anything about protein digestibility in the first instance (rebutted above), this

argument misreads the Amended Complaint's allegations about protein quality. First, the Complaint does not allege that "most proteins are not fully digestible"; Defendant again simply makes that up. Plaintiffs clearly allege that there are many "high quality" "complete proteins" such as those based on whey. ECF 37 ¶¶ 27-33. Second, Plaintiffs also do not allege that even plant-based proteins are *never* fully digestible; it just says that they are *rarely* so, which includes the allegation that *some types are* fully digestible. See, e.g., ECF 37 at ¶ 32 ("Plant proteins *rarely* contain all nine essential amino acids.") (emphasis added); *accord Van's II*, 2022 U.S. Dist. LEXIS 154627, at *21 (where complaint alleged that plant protein "rarely" contains all essential amino acids, interpreting front label to mean all protein was digestible was not unreasonable). Thus, unlike *Pratt*, the Complaint does not take any positions that the alleged belief is implausible. Cf. *Pratt v. Whole Food Mkt. Cal., Inc.*, No. 5:12-cv-05652-EJD, 2015 U.S. Dist. LEXIS 134968, at *11 (N.D. Cal. Sep. 30, 2015) (contradictory allegations that plaintiff believed evaporated cane juice both "was" and "was not" a sugar made allegations implausible).

Unlike the cases Defendant cites, the Complaint is also not alleging that Plaintiff adopted a belief widely known to be unreasonable. *See Maxwell v. Unilever United States, Inc.*, No. 12-1736, 2018 WL 1536761 (N.D. Cal. Mar. 29, 2018) (allegation plaintiff believed Pepsi was free of artificial flavors and preservatives was facially implausible given widespread knowledge it was an artificial soft drink); *Thomas v. Costco Wholesale Corp*., No. 21–55335, 2022 WL 636637, at *2 (9th Cir. Mar. 4, 2022) (Costco ad that included no representation a wireless charger was included could not reasonably be interpreted as stating one would be, particularly where knowledge of large price premium attached to wireless chargers made advertised price implausible for that feature); *Bush v. Mondelēz Int'l, Inc.*, No. 16-2460, 2016 WL 5886886, at *4 (N.D. Cal. Oct. 7, 2016) (no plausible allegations of misleading conduct where general public was aware of slack filling as a common practice). Again, for the Court to assume that ordinary consumers know that not all protein is nutritionally available in Defendants products, it would have to ignore the Amended Complaint's allegations that ordinary consumers no nothing about protein digestibility.

Nor do Plaintiffs' allegations that they normally rely on %DV disclosures foreclose the possibility of purchasing protein products that lack the %DV. They allege that they use the %DV

information as a basis for comparison *when manufacturers provide that information*—but that not all always do. ECF 37 ¶¶ 55, 62. When they do not, Plaintiffs have no other information to rely on other than the protein quantity claims, which they believe represents fully digestible, high quality protein. *Id.* Given the front label's prominent advertisement of "7G protein," it is perfectly plausible for a reasonable consumer to infer from the "7g" value repeated in the NFP without qualification that 100% of the "7g" would be digested and go toward the user's daily allowance, which is precisely what Plaintiffs allege they believed here. Defendants' assertion that these beliefs are "difficult to fathom" amounts to no more than an attack on Plaintiffs' credibility—a fact question not suitable for disposition at the pleading stage.

## C. Without a %DV, Perfect's Labels Are Unlawful.

Perfect Bar's final argument is that its front-label protein claims are not unlawful per se. ECF 37 at 11-13. Defendant already made this argument in its first motion to dismiss.  See ECF 22 at 10-12 (arguing that (i) even without a %DV, their front-label protein content claims were not misleading, and therefore not unlawful). As discussed above in Section II.D, this Court rejected Perfect Bar's arguments, holding that "Defendant's conduct does not comply with Section 101.9(c)(7) because it puts nitrogen-method protein claims on the front label without the corresponding PDCAAS figures on the nutrition facts panel." ECF 34 at 4. The Court accordingly held that Plaintiffs had plausibly "that the front-label protein claims are unlawful without corresponding PDCAAS figures on the nutrition facts panel." *Id.* at 5.

Defendant ignores the Court's prior ruling and tries to reargue this issue as though the Court had not already decided it. While Defendant's current motion goes into more detail regarding interpretation of the relevant regulations than its prior brief, the core argument it makes is exactly the same: because the front label is not "misleading," it cannot be unlawful. Compare ECF 22 at 10 ("this Court . . . held that Perfect Bar's front-label protein claims are not misleading . . . which means that they cannot be unlawful") with ECF 37 at 11 ("[T]he fact that the FDA requires manufacturers to state the 'corrected amount of protein' in the Nutrition Facts panel 'does not mean that statements of protein quantity would be misleading without this additional context.' . . . And for that reason, the alleged omission . . . does not render Perfect Bar's front-label protein

1    claims per se unlawful.").

2         Because the Court has already decided this issue, this section of Defendant's motion to

3    dismiss is a procedurally improper motion for reconsideration, which the Court should deny. *See*,

4    e.g., *Bush v. Liberty Life Assurance Co. of Bos.*, 130 F. Supp. 3d 1320, 1326 (N.D. Cal. 2015)

5    (denying duplicative argument in motion to dismiss amended complaint, rejected in order on first

6    motion to dismiss, as an improper motion for reconsideration); *Milan v. Clif Bar & Co.*, 489 F.

7    Supp. 3d 1004, 1008 (N.D. Cal. 2020) (successive motion presenting same argument as prior

8    motion under Rule 12 was an improper motion for reconsideration). To the extent that Defendant

9    makes any new arguments that could have been made in its first motion to dismiss, it waived them

10   failing to do so in its first motion. *See* Fed. Rule Civ. Proc. 12(g)(2) ("Except as provided in Rule

11   12(h)(2) or (3), a party that makes a motion under [Rule12] must not make another motion under

12   this rule raising a defense or objection that was available to the party but omitted from its earlier

13   motion"); Fed. Rule Civ. Proc. 12(h)(2) (limiting presentation of waived "failure to state a claim"

14   arguments to motions under Rules 7 and 12(c) and trial).

15        But even if the Court feels the need to revisit its prior holding, the Amended Complaint

16   still pleads a plausible violation of the UCL's unlawful prong. Plaintiffs' UCL unlawful prong

17   claim alleges that Perfect Bar violated the Sherman Law (which adopts the FDA regulations) by

18   making a protein claim on the front label even though it failed to meet the federally (and state)

19   mandated requirements for making that claim. ECF 1 at ¶¶ 5–6, 32–33. Section 101.9(c)(7)(i) is

20   clear: if a product makes a "protein claim" the manufacturer "*shall*" calculate the "corrected

21   amount of protein per serving" using PDCAAS, and provide a statement to consumers of that

22   corrected amount per serving expressed as a %DV in the NFP. The converse is necessarily true—

23   without having calculated the PDCASS and provided a statement of the corrected amount of

24   protein expressed as a %DV, a manufacturer *shall not* make *any* protein claim. There is no way

25   to construe the regulations to permit a front label protein claim in the absence of the necessary

26   information in the NFP and Perfect Bar still offers none.

27        Perfect Bar contends that only the omission in the NFP is unlawful and that therefore the

28   front label cannot be challenged, but that does not make any sense. As Perfect Bar itself

- 17 -
PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS – CASE NO. 3:22-cv-02479-JSC

acknowledges, "[a]s a general rule, the FDA regulations do not require a manufacturer to state the 'corrected amount of protein' in the Nutrition Facts Panel." ECF 44 at 2. Or in other words, the simple omission of a protein %DV is not by itself unlawful.  It is only the omission of the %DV *in the presence of a front label protein claim* that is unlawful. 21 C.F.R. § 101.9(c)(7)(i)-(ii). That means there are only two lawful scenarios under the regulations: if the Defendant makes a protein claim, it must provide a %DV in the NFP (which Defendant did not do), or, if it wants to omit the %DV in the NFP (which Defendant did) then it cannot make a front label protein claim. *Id.* There is no scenario where Defendant's front label protein claim is *lawful* in the absence of the %DV in the NFP, and, accordingly, Plaintiff's can challenge the front label as unlawful, as this Court previously held. ECF 34 at 6.

This interpretation of § 101.9(c)(7) is buttressed §§ 101.13(n) & (b), a regulations specific to front label nutrition content claims. Section 101.13(n) states that "[n]utrition labeling in accordance with § 101.9…*shall be provided for any food for which a nutrient content claim is made*," and § 101.13(b) in turn, states that "a nutrient content claim[] *may not be made on the label*…unless the claim is made in accordance with this regulation [i.e., § 101.13] . . . ." Moreover, the FDA made clear when promulgating § 101.13(n) that it means a manufacturer can only make "a nutrient content claim . . . on the label or in labeling of a food, *provided* that the food bears nutrition *labeling that complies with the requirements in proposed § 101.9*." 58 Fed. Reg. 2302, 2310 (emphasis added). Because Perfect Bar did not state the "corrected amount of protein" in the nutrition facts panel (NFP) on the *back panel* in compliance with § 101.9(c)(7)(i), its entire label, its front label nutrient content claim violated section 101.13(n) and thus, could "not be made on the label" pursuant to § 101.13(b).

Perfect Foods arguments to the contrary are specious. Defendant's first argument is that, because 21 C.F.R. § 101.13(i)(3) preempts Plaintiffs' claims that the front label is "misleading," it also effectively precludes any claim the front label statement is unlawful, even if the label violates the other FDA regulations discussed above. This is just Defendant's preemption argument from its first motion to dismiss, repackaged as one of regulatory interpretation. This Court already rejected Defendant's argument once. ECF 34 at 6 (reviewing cases approving

theory that front label claim without %DV in NFP is unlawful and holding that "Plaintiffs plausibly allege that the front-label protein claims are unlawful without corresponding PDCAAS figures on the nutrition facts panel.").

Moreover, Defendant's argument that its compliance with § 101.13(i)(3) "authorized" its front label claim despite a violation of § 101.13(n) also makes no sense. Section 101.13(b) does not state that a nutrient content claim can be made so long as the claim complies with *one provision* of this regulation. It states that a nutrient content claim "may not be made on the label" unless the manufacturer complies with *the entirety* of this regulation, i.e. all of section 101.13 *including* section 101.13(n). *See* 21 C.F.R. § 101.13(b); *accord Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015) ("Under the FDA regulations, the general rule is that 'nutrient content claims' are not permitted on food labels."). As explained above, § 101.13(n) conditions any nutrient content claims on full compliance with the NFP, which compliance here was absent. Since Perfect Bar failed to provide a %DV for protein in the NFP, it failed to comply with section 101.13(n), and therefore section 101.13(b) states it cannot make any nutrient content claims on the front label. Given the violation of section 101.13(n), its compliance with section 101.13(i)(3) is immaterial to Plaintiff's unlawfulness claim.

## V.   CONCLUSION

For the foregoing reasons, the Court should deny Perfect Bar's Motion to Dismiss Plaintiffs' First Amended Complaint.

Dated: November 22, 2022

**GUTRIDE SAFIER LLP**

*/s/ Anthony J. Patek/*
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
  anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*