UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEHVA ROFFMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>PERFECT BAR, LLC,<br><br>    Defendant. | Case No. 22-cv-02479-JSC<br><br>**ORDER RE: MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Re: Dkt. No. 44 |

Plaintiffs are consumers who challenge Defendant's claims on its product labels about the amount of protein they contain. The Court granted Defendant's motion to dismiss and granted Plaintiffs leave to amend their claims based on the theory that Defendant's front-label protein claims do not comply with 21 C.F.R. §§ 101.9(c)(7) and 101.13(n). (Dkt. No. 34.)[1] The Court held that theory was not expressly or impliedly preempted, but it was not supported by plausible allegations of reliance. (*Id.* at 3–11.) Plaintiffs filed an amended complaint, (Dkt. No. 37), and now before the Court is Defendant's motion to dismiss, (Dkt. No. 44). After carefully considering the briefing, and with the benefit of oral argument on January 12, 2023, the Court DENIES the motion. Plaintiffs plausibly allege reliance. Defendant's arguments to the contrary improperly seek to draw inferences in its favor.

**COMPLAINT ALLEGATIONS**

Defendant makes claims on the front labels of its food products about the amount of protein they contain. For example, the front label of the Perfect Bar in Dark Chocolate Chip Peanut Butter flavor says "15G PROTEIN" and the front label of the Perfect Peanut Butter Cups

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Dark Chocolate flavor says "7G PROTEIN." (Dkt. No. 37 ¶ 2.) But "not all proteins are the same in their ability to meet human nutritional requirements, so a simple statement about the number of grams does not actually inform consumers about how much usable protein they are receiving." (*Id.* ¶ 3.)

> Some proteins are deficient in one or more of the nine amino acids essential to human protein synthesis and/or are not fully digestible within the human gut. When a human body uses up the least prevalent essential amino acid from a food product, protein synthesis shuts down and all of the remaining amino acids from that protein source degrade mostly into waste. Likewise, whatever portion of a protein source is not digestible is similarly unavailable for protein synthesis. A protein's ability to support human nutritional requirements is known as its "quality."

(*Id.*; *see id.* ¶¶ 27–29.)

The "Protein Digestibility Corrected Amino Acid Score" ("PDCAAS"), also known as the "corrected amount of protein per serving," is a method for measuring protein quality. (*Id.* ¶ 4.) PDCAAS "combines a protein source's amino acid profile and its percent digestibility into a discount factor ranging from 0.0 to 1.0 that, when multiplied by the total protein quantity, shows how much protein in a product is actually available to support human nutritional requirements." (*Id.*) For example, nuts, the primary protein source in Defendant's products, have a PDCAAS score of 0.4–0.5, meaning only 40–50% of the protein is "actually available to support human protein needs." (*Id.* ¶ 6.) PDCAAS can also be expressed as a percent daily value, meaning "the corrected amount of protein per serving divided by the daily reference value for protein of 50 grams." (*Id.* ¶ 5.) For example, a product with 10 grams of protein and a PDCAAS score of 0.5 would have a percent daily value of 10%: 10 grams multiplied by 0.5, divided by 50 grams. The Federal Food, Drug, and Cosmetic Act ("FDCA") and its regulations require that if a product makes a protein claim on its front label using the nitrogen method, then a PDCAAS figure, expressed as a percent daily value, must appear on the product's nutrition facts panel. (*Id.* (citing 21 C.F.R. § 101.9(c)(7)).) Many of Defendant's products with front-label protein claims do not have PDCAAS figures on the nutrition facts panel. (*Id.* ¶ 7 (citing 21 C.F.R. §§ 101.13(b), (n)).)

Plaintiff Ms. Chong bought the Perfect Bar in Dark Chocolate Chip Peanut Butter flavor at stores around the Bay Area between 2018 and 2020. (*Id.* ¶ 53.) Plaintiff Ms. Roffman bought

2

1   Perfect Peanut Butter Cups in Dark Chocolate and Milk Chocolate flavors at stores around the Bay
2   Area between 2019 and 2022. (*Id.* ¶ 60.) Protein intake is important to Ms. Chong as a marathon
3   runner, and to Ms. Roffman as a yoga instructor concerned about losing muscle with age. (*Id.* ¶¶
4   55, 62.) Each Plaintiff "read[]" and "relied on" the "front labels that promised" "7G PROTEIN,"
5   "8G PROTEIN," and "15G PROTEIN," "believ[ing] . . . that the product would actually provide
6   her the specific amount of protein on the front label in a form her body could utilize as protein."
7   (*Id.* ¶¶ 54, 61.) Both Plaintiffs also regularly look at a product's nutrition facts panel to decide
8   what to buy. Each read the nutrition facts panel on Defendant's product before buying it for the
9   first time and, because it did not list a percent daily value PDCAAS figure, she assumed the grams
10  of protein listed on the front label were all in a form her body could use. (*Id.* ¶¶ 55–56, 62–63.)
11  Had she known the product provided a lesser amount of usable protein—15% or 8%, respectively,
12  of the daily value—she would not have bought it or would have paid less. (*Id.* ¶¶ 56–58, 63–65.)
13       Plaintiffs sue on behalf of a nationwide class and California subclass of consumers who
14  bought any of Defendant's products that have front-label protein claims. (*Id.* ¶¶ 18, 67.) Their
15  sole cause of action is California's Unfair Competition Law ("UCL"). (*Id.* ¶¶ 73–85.) Plaintiffs
16  disclaim any causes of action under the FDCA and its regulations, relying on them only to the
17  extent they are also enacted under state law or provide a predicate for liability under state law.
18  (*See id.* at 22.)

### DISCUSSION

20  As a matter of statutory standing for their claim under the unlawful prong of the UCL, (*see*
21  Dkt. No. 34 at 8–9), Plaintiffs must have "actually relied on whatever defect in a product label
22  allegedly makes it actionable when making [the] decision to buy the product." *Shaeffer v. Califia*
23  *Farms, LLC*, 258 Cal. Rptr. 3d 270, 283 (Cal. Ct. App. 2020) (cleaned up); *see Moore v. Mars*
24  *Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020). They must "truthfully allege" that, "had
25  the omitted information been disclosed, [they] would have been aware of it and behaved
26  differently." *Shaeffer*, 258 Cal. Rptr. 3d at 283 (cleaned up); *Daniel v. Ford Motor Co.*, 806 F.3d
27  1217, 1225 (9th Cir. 2015).
28       Plaintiffs plausibly allege they relied on each product's nitrogen-method front-label protein

3

1  claim, the nitrogen-method protein figure on the nutrition facts panel, and the nutrition facts
2  panel's omission of a PDCAAS figure. They likewise plausibly allege that, if the PDCAAS
3  percent daily value had been included on the nutrition facts panel, they would not have bought the
4  products or would have paid less. Allegations that Plaintiffs care about protein for specific
5  reasons, regularly read the nutrition facts panel, and did so before buying Defendant's products for
6  the first time are well across the line "from conceivable to plausible." *Bell Atl. Corp. v. Twombly*,
7  550 U.S. 544, 547 (2007); *see Pino v. Birch Benders, LLC*, No. 22-CV-02194-TSH, 2022 WL
8  4913320, at *3 (N.D. Cal. Oct. 3, 2022) (finding plausible allegations that plaintiffs regularly read
9  the nutrition facts panel; regularly choose the product with a higher percent daily value of protein,
10 if disclosed on the nutrition facts panel; and would not have bought the products or would have
11 paid less if they had known they contained less protein); *Brown v. Van's Int'l Foods, Inc.*, No. 22-
12 CV-00001-WHO, 2022 WL 3590333, at *5–6 (N.D. Cal. Aug. 22, 2022) (same); (*Swartz v.
13 Dave's Killer Bread, Inc.*, Case No. 4:21-cv-10053-YGR, Dkt. No. 46 at 3 (same)).

14     Defendant insists that because Plaintiffs added the nutritional facts panel allegation to their
15 *amended* complaint the Court should conclude their allegations are implausible. Defendant cites
16 no case to support its argument. This omission is unsurprising because if that were the law, there
17 would be no point in granting leave to amend. And Defendant is asking the Court to draw
18 inferences in *its* favor: an allegation only added in an amended complaint must not be plausible.
19 This argument violates black-letter law. *See, e.g.*, *Ass'n for L.A. Deputy Sheriffs v. County of Los
20 Angeles*, 648 F.3d 986, 991 (9th Cir. 2011) (on a motion to dismiss "[t]he court draws all
21 reasonable inferences in favor of the plaintiff").

22     Defendant next argues that because Plaintiffs allege they are protein-conscious, it is
23 implausible they would assume the nitrogen-method protein figures are in a form their bodies can
24 use. Says who? Again, this wholly unsupported argument violates the basic tenet of a 12(b)(6)
25 motion. "The plausibility standard is not akin to a probability requirement, but it asks for more
26 than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662,
27 678 (2009) (cleaned up). Plaintiffs' reliance allegations meet that standard.

28     Finally, Defendant argues Plaintiffs' theory means only that the omission of a PDCAAS

4

figure from the nutrition facts panel is unlawful, not that the nitrogen-method protein claim on the front label is unlawful. The Court does not understand where this argument leads. It appears to challenge what the Court already decided: Plaintiffs' theory the front-label protein claims do not comply with 21 C.F.R. §§ 101.9(c)(7) and 101.13(n) is viable under the unlawful prong of the UCL. (*See* Dkt. No. 34 at 3–6.) In any event, the argument draws a distinction without a difference: the omission of a PDCAAS figure from the nutrition facts panel is unlawful *because* there is a nitrogen-method protein claim on the front label. *See* 21 C.F.R. §§ 101.9(c)(7)(i) (*if* "a protein claim is made," *then* "[a] statement of the corrected amount of protein per serving," "expressed as Percent of Daily Value," "shall be given"), 101.13(n) (requiring that if a protein claim is made, product must comply with Section 101.9). In other words, Defendant's allegedly unlawful labeling could be fixed either by adding a PDCAAS figure to the nutrition facts panel or by removing the nitrogen-method protein claim from the front label. *Cf. id.* §§ 101.9(c)(7)(i) (not requiring a PDCAAS figure on the nutrition facts panel if there is no front-label protein claim), 101.13 (not requiring a front-label protein claim). There is no meaningful difference between the front label's information being unlawful because of the nutrition facts panel's omission and the nutrition facts panel's omission being unlawful because of the front label's information.

\* \* \*

Plaintiffs plausibly allege actual reliance and Defendant has not identified any other reason why Plaintiffs' UCL unlawfulness claim fails as a matter of law.

## CONCLUSION

Defendant's motion to dismiss is DENIED.[2] The Court will hold an initial case management conference on February 2, 2023 at 1:30 p.m. via Zoom video. A joint case management conference statement is due one week in advance.

This Order disposes of Docket No. 44.

//

//

---

[2] Its request for judicial notice, (Dkt. No. 45), is GRANTED. *See* Fed. R. Evid. 201; *King v. County of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018).

**IT IS SO ORDERED.**

Dated: January 12, 2023

　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　JACQUELINE SCOTT CORLEY
　　　　　　　　　　　　　　　　　　　　　United States District Judge

6